OSCAR H. SCHUERMAN, APPELLANT, v. GENERAL AMERICAN LIFE INSURANCE CO., RESPONDENT.—106 S. W. (2d) 920.

Kansas City Court of Appeals.  May 24, 1937.

*Lamm & Barnett* and *Crawford & Harlan* for appellant.

*Montgomery, Martin & Montgomery* and *J. R. Burcham*, of Counsel, for respondent.

BLAND, J.—Plaintiff, the insured under a life insurance policy with disability provisions, brought this action to recover benefits in the sum of $2000 for total and permanent disability suffered by him.

At the close of plaintiff's testimony the court instructed the jury to find for the defendant, which the jury accordingly did, resulting in a judgment in its favor. Plaintiff has appealed.

The facts show that, under date of October 1, 1927, the Missouri Pacific Railroad Company, plaintiff's employer, made application to the Missouri State Life Insurance Company, for a group life insurance policy "on the one year renewable term plan." As originally written the group policy was effective for a period of one year from October 1, 1927, with the option of the railroad company to renew it from year to year for an additional term of one year. The policy was renewed from year to year until October 1, 1931, at which time the last yearly renewal term expired, but by a special agreement between the railroad and the insurance companies the policy was extended to midnight October 3, 1931. The obligations under the policy of the Missouri State Life Insurance Company were assumed by the defendant on the 7th day of September, 1933.

The group policy insured certain employees of the railroad company, among whom was the plaintiff, against death and against total and permanent disability. The policy provided:

"The insurance of an employee shall cease at the expiration of the period for which premiums are last received by the Company for such employee, except as herein provided. (This exception refers to certain conversion privileges accorded the employees.) If an employee is disabled, given leave of absence, or temporarily laid off, the employment need not be considered terminated unless the employer shall so elect.

"If any premium shall not be paid when due, this policy shall terminate."

The policy provided for the issuance of an individual certificate to the employees and accordingly plaintiff received an individual policy in the sum of $2000, certifying that it was issued under and subject to the terms and conditions of the group policy. The certificate recited that the beneficiary was to be paid the sum last mentioned should insured's death occur during the continuance of the insurance under the certificate.

The certificate further provided:

"The insurance provided by said policy for the employee shall terminate at the expiration of the period for which premiums are last deducted by the employer from the pay of the employee, or remitted by the employee to the employer, unless the employee shall elect to

continue the insurance in accordance with the Conversion Privilege given on the second page of this certificate.''

Both the group and the individual policy provided:

"TOTAL AND PERMANENT DISABILITY BENEFITS:—"If any employee insured under this policy shall furnish this company with due proof that before having attained the age of 60 years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months, the Company will immediately pay to such Insured in full settlement of all obligations hereunder as to such insured's life, the amount of insurance in force hereunder on such Insured at the time of the approval by the Company of the proofs as aforesaid.''

Both the group policy and the certificate contained a provision granting to the employee certain conversion privileges. Such privileges were granted only in case of the termination of the employment for any reason whatsoever. The group policy shows that it was within the contemplation of the parties that the employees of the railroad should contribute toward the premiums to be paid on the policy on the basis of 60c per month per $1000 of insurance. The evidence shows that the sum of $1.20 per month was deducted by the railroad company regularly from plaintiff's wages for payment upon the insurance.

Prior to May 15, 1931, plaintiff became afflicted with paint poisoning which, at a later date, developed into paralysis. Plaintiff continued at his work with the railroad company until May 15, 1931, at which date he was laid off temporarily. He was not discharged at this or at any any other time. Four or five months later he was asked if he was able to resume work. However, he could not do so on account of his physical condition. The premium payments were deducted from plaintiff's wages to pay his insurance to June 1, 1931. No premiums were paid to the insurer by the employer to cover his insurance after that time and plaintiff did not pay them.

It was admitted at the trial that plaintiff became totally and permanently disabled on May 15, 1931. On April 19, 1936, he submitted proofs of his disability to the defendant but the latter denied all liability.

Plaintiff insists that the court erred in instructing the jury to find for the defendant. The court, no doubt, gave the instruction upon the theory now advanced by the defendant in its brief, which is as follows:

"The respondent (defendant) contends that under such clause, (that is the one headed 'Total and Permanent Disability Benefits') by reason of express limitations and conditions, the company only

insured against a total and permanent disability which existed for a period of six months, so that, unless the group policy and the employee's individual coverage thereunder were maintained in force throughout such six months' period and were in force at the end of such period, no liability would attach. Respondent's position in this connection is that under this clause the subject of the insurance, the contingency insured against, is a disability which has existed for six months and no liability can arise or cause of action accrue in favor of any insured employee unless and until the disability forming the basis of claim has existed for six months, and due proof thereof is submitted during the effective term of both the group policy and the employee's individual coverage thereunder. Of utmost significance as indicative of the intent of the parties is the fact that the company's sole promise is to pay 'the amount of insurance in force' on the insured employee's life at the time of approval of proofs showing the requisite disability."

We are unable to agree with defendant's contention. If the policy provided for six months total disability insurance there might be merit in the contention; but it does not so provide as it expressly states that it is insurance against permanent disability. The six months' provision provides merely for a testing period as to the character of the disability as to its permanency. As stated in Paul v. Mo. St. Life Ins. Co., 52 S. W. (2d) 437, 439: "The six months' clause was for the purpose of determining, if possible, the reality of the disability, and, if at the end of that time it appeared with reasonable certainty that the disability would last for life, then the company obligated itself to pay." [See also Shea v. Aetna Life Ins. Co. (Mass.), 198 N. E. 909, 914]. The existence of total disability for a period of at least six months was to be evidential of the permanency of the disability but not, of course, conclusive. In effect, the existence of the disability for that length of time was a part of the proof to be furnished the insurer of the permanency of the disability.

Of course, under the provisions of the policies, the insurance came to an end on October 3, 1931, at which time the payment of premiums upon plaintiff's insurance had ceased. In fact the payments ceased on June 1, 1931. It is, therefore, important to decide whether his insurance matured prior or subsequent to the last mentioned date. It is our opinion that it matured prior thereto.

The disability, itself, occurred in this instance on May 15, 1931, and it was this disability that was insured against and, when it occured, under the terms of the policies, plaintiff's insurance became matured. There was nothing remaining for him to do in order to recover the amount of the insurance save to wait six months and then furnish proof to the company that his disability had existed for that period of time and that it was permanent.

A careful analysis of defendant's contention shows the injustice that might result in giving it effect in construing the policies. It is apparent that it would result in many instances in depriving insured of his insurance contrary to the understanding that a laymen would have of the policies:

It will be noted that plaintiff's disability began within the last six months the policies were in force.. The group policy provided for one year term insurance which ceased on October 3, 1931. It is, therefore, apparent that, if the construction is given the policies that defendant is contending for, there was no possibility of plaintiff recovering for his disability, even though he continued paying the premiums on his insurance. Both the group and the individual policy plainly, upon their face, indicate that, if the premiums were paid, they furnished insurance for total and permanent disability covering the duration of their existence. A lawyer skilled technically might construe the policies differently but no layman policyholder, reading them, would arrive at the conclusion that he was not insured against such disability during the entire time the policies were to run and the premiums paid. The most that can be said in favor of defendant is that there is an ambiguity in the policy and, consequently, it is subject to construction.

Our construction of the policy is not only supported by the authorities that we have cited but, also, by the cases of Missouri State Life Insurance Co. v. Foster (Ark.), 69 S. W. (2d) 869; and Smith v. Mutual Life Ins. Co. of N. Y. (Ark.), 69 S. W. (2d) 874.

In support of its contention defendant cites the case of Kingsland v. Mo. State Life Ins. Co., 66 S. W. (2d) 959, and some foreign cases. The Kingsland case is authority in favor of the defendant but it seems to have been a case of first impression on the question before us. A great deal has been written on the subject since the decision in that case, throwing much light upon the impractical and, in fact, dire results that might flow from such a construction as was given a similar provision in the Kingsland case. Such a provision can only be given a practical construction upon a careful examination of the conditions, circumstances and possibilities involved in the application of the provision to a practical situation. Such matters were not presented in full to this court at the time of the decision in the Kingsland case and, after further consideration of the matter, we are of the opinion that the conclusion reached therein was not a proper one and, therefore, the case is overruled.

However, defendant calls our attention to the fact that the policy provides that the insurance should be in force at the time of the approval by the company of the proofs of loss and that the evidence in this case shows that the insurance had expired long prior to the time of the furnishing of the proofs. Literally, the policy seems to provide that there could be no recovery unless the insurance was in

force at the time the proofs were furnished. It seems apparent that this provision was inserted for the purpose of permitting the company to claim a forfeiture of the insurance if the proof of disability was not made during the period in which premiums were paid.

It is firmly established in this State that an insurance company may not charge a premium covering any period of time in which there is no insurance. [Halsey v. Ins. Co., 258 Mo. 659; Johnson v. American Cent. Life Ins. Co., 248 S. W. 115, 120, and cases cited therein.]

As before stated the insurance matured on May 15, 1931. Plaintiff was not required to pay premiums or do anything else to keep it in force after that time. The provision in the policies requiring that the insurance should be kept alive by the payment of premiums until proof of loss was furnished is without any consideration to support it and it is, therefore, void.

In addition a careful analysis of the policies shows that this provision is incapable of enforcement. The policies provided that, upon the occurrence of liability for permanent and total disability, which we have held took place in this instance on May 15, 1931, the life insurance feature of the policies should cease. Consequently, the insurance ceased on May 15, 1931, and could not have been in force, as written, during any time that it was possible to make the proofs.

When liability has become fixed by the maturing of a policy the courts are reluctant to deprive insured of the benefits under it by any narrow or technical construction of the conditions which prescribe the formal requisites by means of which the accrued right is to come into fruition. [1 Joyce on Ins. (2 Ed.), pp. 588, 589; Moss v. Met. Life Ins. Co., 84 S. W. (2d) 395; Walker v. Am. Auto. Ins. Co., 70 S. W. (2d) 82.]

In the policies before us it does not appear that the mere lapse of time in making the proofs is involved but the insurer has complicated the issue by inserting a stipulation for proof of disability in the primary contracting clause. There was no possibility for plaintiff to comply with this provision of the policies for the reason that he could not have filed proofs of loss until six months had transpired after he suffered his disability. At the end of the six months' period the group policy had expired. He was powerless to renew it upon its expiration even had he paid premiums after June 1st. Even had the group policy been renewed by his employer, and the premiums duly paid thereon, there would have arisen a question as to whether it was not a new policy and the proof had to be made under the old one.

In refusing to give the construction now contended for by the defendant to a policy containing language similar to the one in the case at bar, the Supreme Court of Tennessee in the case of Smithart v. John Hancock Mut. Ins. Co. (Tenn.), 71 S. W. (2d) 1059, 1063, stated in language that meets our entire approval:

"The necessity that subsequent premiums be paid to preserve the insured employee's accrued rights is therefore nothing more or less than a condition to the right of recovery, and as such is, in our opinion, an altogether groundless and unreasonable condition. The entire contract having matured, and the substantive right of the employee having become fixed, by the happening of the contingency insured against, the disability of the insured, there is no further or continuing risk to be carried by the insurer in consideration of further premiums, in so far as the disabled employee is concerned. Payment of additional premiums would not continue in force insurance on his life, since the entire value of the contract is already payable as indemnity for his disability. The condition is therefore impossible of performance, and to enforce it would be to nullify the contract and render it altogether unenforceable whenever the disability insured against occurs near the end of the term for which premiums have been paid, as in the case at bar." [See, also, Gen. Am. Life Ins. Co. v. Bryson, 61 Pac. (2d) 1094; Horn's Admr. v. Prudential Ins. Co. of America (Ky.), 65 S. W. (2d) 1017.]

In the case of Hablutzel v. Home Life Ins. Co. of N. Y., 52 S. W. (2d) 480, the St. Louis Court of Appeals, had before it a policy providing that where one full annual premium had been paid, and before default in the payment of any subsequent premium: "The insured shall before attaining the age of 60 years furnish due proof to the company that he has become totally disabled," etc., the company would waive subsequent premiums during the disability. The court held that the waiver of payment of premiums took place when the disability occurred and not when the proof was made. In addition to this, insured was over the age of 60 when he furnished the proof, yet the court held, l. c. 483: "What possible difference could it make whether the proof he furnished before or after the insured attains the age of sixty years? The vital condition is that the disability occur before he attains that age." The court in the opinion in that case, quoted approvingly from the case of Minn. Mut. Life Ins. Co. v. Marshall, 29 Fed. (2d) 977, 978, as follows: " 'The right of the insured to have his premiums discontinued during disability is one that he had paid for. To make its operation depend upon the time of proof of disability, and not upon the time of disability itself, which was the real thing that he was protecting himself against, renders the provision of the policy under construction imperative and the right of no value.' "

We have examined the cases of Clinton v. Met. Life Ins. Co., 94 S. W. (2d) 1080; Sapay v. Met. Life Ins. Co., 94 S. W. (2d) 1082, and Anderson v. Met. Life Ins. Co., 96 S. W. (2d) 631, cited by the defendant and find them not in point, because it was provided in the policies reviewed in those cases that disability payments would be

made beginning 6 months after the proofs were furnished. The policy in the case at bar contains no provision similar to that one.

We have examined the other cases cited by the defendant, all of which are decisions of foreign courts. Some of the policies reviewed in those decisions contain language different from that contained in the policies now before us, others are identical in language and the result contended for by the defendant arrived at. However, we do not agree with the conclusions reached in those cases cited by the defendant that are in point.

The judgment is reversed and the cause remanded. All concur.

### SEPARATE CONCURRING OPINION.

SHAIN, P. J.—Practically the same question as is presented in this case was before this court in Kingsland v. Missouri State Life Insurance Company, 66 S. W. (2d) 959. In the Kingsland case the question was presented on the pleadings alone and this court affirmed the action of the circuit court in giving a judgment for defendant on the pleadings.

The pleadings in the case at bar are materially different in that herein is more particularly set out the provisions of the master policy and the policy being in evidence the plan of insurance is shown and it is shown by the record in this case that it was provided in the contract that the employee became a direct party to the contract by paying a consideration of sixty cents per month premium for each $1,000 insurance.

While the above facts, disclosed in the case at bar, do not necessarily alter the interpretation that should be given to the clause of the contract that is in issue, still there is incorporated in the case at bar facts that were not presented in the Kingsland case that present new premises. In other words, the whole contract is before us.

In the Kingsland case, as presented by the pleadings therein, the contract involved was a contract wherein the two contracting parties, the employer and the insurance company, contracted for the benefit of a third party, the employee.

In so far as the facts were revealed in the Kingsland case, the insurance given to the employee was a mere gratuity. In that case, after the plaintiff received injury but before the six months had expired, the employer canceled the policy and this court held that as the employer had canceled the policy prior to the time a suit could be brought by the employee thereon, and, that as no cause of action had so accrued that suit could have been brought before the contract was canceled by the employer, that therefore no cause of action could so accrue after the cancellation of the contract as to sustain a suit on said contract.

As before stated, in the Kingsland case we were only reviewing the action of the trial court in giving judgment for defendant on the pleadings and there is authority sustaining such action.

Further, and as before stated, the facts as pled in the Kingsland case were not so lucid as to the issues and merits of the plaintiff's cause of action as in the case at bar and further there are in this case facts shown in the record which added to the more complete pleading of facts giving to a court of review a better viewpoint from which to proceed to conclusions.

I have carefully read the opinion in this case written by my learned brother and conclude that in the former, Kingsland, case the writer followed the line of least resistance and reached a conclusion that is not justified in the light of the presentation and showing made in the case at bar, and I hereby express by concurrence with the opinion written by BLAND, J., herein.

In that the opinion in the Kingsland case, based upon a coverage clause identical with the coverage clause in this case, is to the effect that action is barred in event that the six months total disability has not accrued before termination of the policy, the same is in conflict with the opinion herein and is overruled by the opinion in this case and in this I also concur.